1   GEORGE S. CARDONA
    United States Attorney
2   ROBB C. ADKINS
    Assistant United States Attorney
3   Chief, Santa Ana Branch Office
    GREGORY W. STAPLES
4   Assistant United States Attorney
    California Bar Number: 155505
5   IVY A. WANG
    Assistant Unites States Attorney
6   California Bar Number: 224899
        United States Courthouse
7       411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
8       Telephone: (714) 338-3549
        Facsimile: (714) 338-3561
9       E-mail address: ivy.wang@usdoj.gov

10  Attorney for Plaintiff
    United States of America

11

12                  UNITED STATES DISTRICT COURT

13              FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                       SOUTHERN DIVISION

15  UNITED STATES OF AMERICA,     ) Case No. SA CR 08-024-CJC
                                  )
16          Plaintiff,            ) **GOVERNMENT'S SENTENCING POSITION;**
                                  ) **DECLARATION OF GREG STAPLES**
17              v.                )
                                  )
18  DONGFAN "GREG" CHUNG,         ) Date: 2/8/10
                                  ) Time: 9:00 a.m.
19          Defendant.            )
                                  )
20  ─────────────────────────────)

21        The government files its sentencing position.

22  Dated: January 25, 2010           GEORGE S. CARDONA
                                       Acting Unites States Attorney
23

24

25                                     _____
                                       GREGORY W. STAPLES
26                                     IVY A. WANG
                                       Assistant U.S. Attorneys

27

28

## I.   INTRODUCTION

The government has no objections to the findings in the PSR. The government agrees with Probation's Guidelines calculations and the recommendation for an upward departure or variance. However, as discussed below, the government recommends an upward departure of four levels (as opposed to the two levels recommended by Probation), or a corresponding variance, based on the scope, duration, and seriousness of the offense, the failure of the Guidelines to account for loss, and the threat to the security of the United States resulting from defendant's conduct. The government recommends a sentence of 235 months, along with a $90,000 fine and the other conditions recommended by Probation.

## II.   ADVISORY GUIDELINE CALCULATIONS

### A.   Loss Calculation

The corresponding Guideline section for economic espionage is § 2B1.1, which includes a loss table.  Application note 3(C) to § 2B1.1 states that the

court need only make a reasonable estimate of the loss . . . [t]he estimate of loss shall be based on available information, taking into account, as appropriate and practicable under the circumstances, factors such as the following: (i) The fair market value of the property unlawfully taken or destroyed; or, if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property; (ii) In the case of proprietary information (e.g. trade secrets), the cost of developing that information or the reduction in the value of that information that resulted

1    from the offense . . . (v) More general factors, such as the

2    scope and duration of the offense and revenues generated by

3    similar operations.

4  Unlike fraud and theft cases where loss can typically be measured

5  with some certainty (e.g., how much money investors sent in to a

6  Ponzi scheme), economic espionage to benefit a foreign government

7  presents several issues that cannot be resolved merely by

8  reference to a loss table.  In particular, determination of fair

9  market value is difficult if not impossible where, as here, the

10 technologies are not fungible items for which there are broad and

11 active markets.

12      As noted above, Application Note 3(C)(ii) to § 2B1.1 allows

13 the use of development costs of trade secrets as one measure of

14 loss.[1]  This reflects the practice of courts in cases where fair

15 market value is difficult to assess.  United States v. Four

16 Pillars Enterprise Company, 253 Fed. Appx. 502, 512 (6th Cir.

17 2007)(development costs used as measure of loss); United States

18 v. Ameri, 412 F.3d 893, 900 (8th Cir. 2005) (in case involving

19 misappropriation of employer's proprietary software, which had no

20 verifiable fair market value because it was not available

21 separately, trial court's loss estimate of $1.4 million based on

22 development costs affirmed).

23      Boeing spent more than $35 million in research and

24 development costs for the Delta IV Tail Service Mast and the

25

26      [1]  Application Note 3(C)(ii) was amended in the 2009

27 Guidelines to add the language concerning development costs.
   This language is not referenced in the PSR because it was issued

28 on October 5, 2009, prior to the issuance of the 2009 Guidelines.

Phased Array technologies.  <u>See</u> Declarations of Ken Heinly, Al
Mager, and Emad Farag, filed separately under seal.

**B.  Guideline Calculations**

Probation calculates the Guideline factors as follows:

| | | |
|---|---|---|
| Base offense level: | 6 | USSG 2B1.1(a)(2) |
| Loss > $20 million: | 22 | USSG 2B1.1(b)(1)(L) |
| Theft of trade secret to benefit foreign gov.: | 2 | USSG 2B1.1(b)(5) |
| Abuse of trust: | 2 | USSG 3C1.1 |

Based on an offense level of 32 and a criminal history category
of I, the resulting sentencing range is 121 to 151 months.

Probation recommends an upward departure of two levels
because the Guidelines do not adequately account for the § 3553
factors.  Probation recommends a sentence of 168 months, which is
the mid-level of the sentence range of 151 to 188 months
corresponding to an offense level of 34.  Probation also
recommends a fine of $90,000 based on defendant's net worth of
more than $3 million.

The government agrees with Probation's Guidelines
calculations, the need for a departure or variance, and the
recommended fine of $90,000.  However, as discussed below, an
upward departure of four levels is warranted, resulting in a
sentence of 235 months.

**III.  THE NEED FOR AN UPWARD DEPARTURE**

An upward departure is warranted where "[a] primary
objective of the offense was an aggravating, non-monetary
objective" and where "the offense created a risk of substantial
loss beyond the loss determined [by reference to the loss table

3

in § 2B1.1(b)(1)]." USSG § 2B1.1 Application Note 19(A)(1)(i)
and (iv). With respect to the first factor, the crime in this
case was carried out for political reasons, not economic ones.
Defendant wanted to benefit the "motherland." Memorandum of
Decision p. 8. Given the PRC's hostile military posture towards
the United States, an "aggravating, non-monetary objective"
motivated this crime.

      With respect to the second factor, the crime in this case
"created a risk of substantial loss" beyond the loss accounted
for under § 2B1.1. The R&D costs do not account for potential
lost revenues to Boeing. The Delta IV program represents a very
large source of revenues to Boeing from future launches. See
Declarations of Ken Heinly and Al Mager. The Tail Service Mast
technology is a critical element of the Delta IV program - the
rocket would be destroyed at ignition without the technology
Boeing developed. Giving this technology to another country
could impact Boeing's ability to earn a return on its investment.
In particular, this technology would aid the PRC's development of
its "Long March" rocket for commercial uses. Declaration of Ken
Heinly ¶ 2. And while the Phased Array technology was not used
on the Shuttle, it is currently used on a number of sensitive and
proprietary programs at Boeing. Memorandum of Decision p. 24;
Declaration of Emad Farag ¶ 5. The ongoing use of the Delta IV
and Phased Array technologies in proprietary programs at Boeing
establishes "a risk of substantial loss" beyond that measured by
§ 2B1.1.

      The R&D costs for the Delta IV and Shuttle Phased Array
technologies also do not account for losses from defendant's

conviction under § 951 for acting as an agent of the PRC.
Defendant had documents relating to the F-15, B-1 bomber, the CH-47 helicopter, and the X-37, to a name a few.  With respect to
the X-37 document, its disclosure would allow an adversary to
determine Boeing's past and present technology capabilities
related to ongoing proprietary "black programs."  Declaration of
Paul Geery.  The information in these documents was proprietary
to Boeing.  Memorandum of Decision p. 7.  Reliance on the R&D
costs for the Delta IV and Phased Array programs alone does not
adequately account for potential economic loss to Boeing and the
security threat to the United States from the other documents
found in defendant's home.  For example, there is no way to
assess the loss or harm to the United States from defendant
giving twenty-seven restricted manuals on the B-1 bomber to a
consular officer of the PRC for delivery to China.  Again, the
documents pertaining to the numerous weapons systems defendant
possessed create a "risk of substantial loss" beyond that
measured by § 2B1.1.

Plainly, defendant's conduct was motivated by an
aggravating, non-monetary object, and created a risk of
substantial loss not captured by § 2B1.1.  An upward departure of
4 levels is warranted in this case.  The resulting offense level
would be 36, with a sentence range of 188 to 235 months.  Given
that defendant has not accepted responsibility for his conduct, a
high end sentence of 235 months is warranted.

**IV.   SECTION 3553 ANALYSIS**

Section 3553 provides in pertinent part as follows:

The court shall impose a sentence sufficient, but not

5

greater than necessary, to comply with the purposes set
forth in paragraph (2) of this subsection.  The court, in
determining the particular sentence to be imposed, shall
consider--

    (1) the nature and circumstances of the offense and the
    history and characteristics of the defendant;

    (2) the need for the sentence imposed--

        (A) to reflect the seriousness of the offense, to
        promote respect for the law, and to provide just
        punishment for the offense;

        (B) to afford adequate deterrence to criminal
        conduct;

        (C) to protect the public from further crimes of
        the defendant; and

        (D) to provide the defendant with needed
        educational or vocational training, medical care,
        or other correctional treatment in the most
        effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range
    established for--

        (A) the applicable category of offense committed
        by the applicable category of defendant as set
        forth in the guidelines--

    (5) any pertinent policy statement--

        (A) issued by the Sentencing Commission pursuant
        to section 994(a)(2) of title 28, United States
        Code. . . .

1          (6) the need to avoid unwarranted sentence disparities
2          among defendants with similar records who have been
3          found guilty of similar conduct; and
4          (7) the need to provide restitution to any victims of
5          the offense.
6    Absent an upward departure in the Guidelines calculations, the
7    above-factors warrant a substantial variance.  Consideration of
8    the § 3553 factors supports a sentence of twenty years.

9          **A.   The Nature and Circumstances of the Offense and the**
10              **History and Characteristics of the Defendant**

11         As the Court found, defendant was an agent of the PRC for
12   more than thirty years.  Memorandum of Decision p. 2.  During
13   that time he passed technology, both restricted and unrestricted,
14   to the government of the PRC.  Defendant traveled to the PRC to
15   give presentations on the technology he worked on for Rockwell
16   and Boeing.  Defendant met with PRC officials in China and here
17   in the U.S.  None of these meetings were disclosed to his
18   supervisors at Rockwell or Boeing.  The nature and circumstances
19   of the offense, much like the scope and duration factors under
20   the Guidelines, support a sentence of twenty years.

21         Defendant has no prior convictions.  The absence of any
22   prior criminal history would normally be a mitigating factor.  In
23   this case, however, it allowed defendant to get access to the
24   technology.  Put differently, it would be a rare espionage case
25   where a defendant had any prior criminal history.  Such persons
26   would not be given access to sensitive information.  Thus, the
27   lack of a criminal record enables espionage, it is not a
28   mitigating factor.

                                   7

**B.    The Seriousness of the Offense, the Need to Promote Respect for the Law and Provide Just Punishment for the Offense**

There are few crimes more serious than espionage. Espionage, like treason and terrorism, is an offense "against the State." <u>Kennedy v. Louisiana</u>, 128 S.Ct. 2641, 2659 (2008).  It poses a threat to the physical and economic security of our country.  The fact that the Delta IV and Phased Array technologies are not weapons systems does not imply an absence of a security threat.  In January 2007 China used a ballistic missile to shoot down one of its own satellites.  Staples Dec. Ex. 1 (*New York Times* article dated 1/20/07).  A report from the Pentagon in March 2008 stated that writings by the PRC military "emphasize the necessity of 'destroying, damaging and interfering with the enemy's reconnaissance/observation and communications satellites . . . to blind and deafen the enemy.'"  Staples Ex. 2 (*New York Times* article dated 3/4/08).  Providing advanced space technology to the PRC threatens our security.

In addition, defendant did collect and provide restricted information pertaining to weapons such as the F-15 and B-1 bomber.  Defendant gave twenty-seven restricted manuals on the B-1 bomber to a consular official of the PRC consulate in San Francisco for delivery to China.  This was a plain act of espionage for which no mitigating explanation can be given.  As noted, there can be no more serious offense than one which compromises the security of this nation.

The need to promote respect for the law and provide a just punishment for the offense also supports a sentence of twenty

8

years.  Defendant betrayed this country.  Defendant came here
after being born during the chaos of the civil war in China,
attended American universities, became a citizen, raised a
family, and worked for more than thirty years on cutting edge
aerospace technologies.  He amassed a personal wealth of more
than $3 million.  Defendant repaid this country by handing the
PRC sensitive technology that he was duty-bound to protect.  A
sentence of twenty years is just punishment for an act of
betrayal that imperils the security of this country.

### C.   Deterrence

The threat that espionage poses to this country demands a
high sentence to deter others who would pass sensitive technology
to a foreign government.  Despite direct evidence of involvement
by Chinese officials in the collection of technology in this case
and in the Chi Mak case, the government of the PRC has denied any
connection to either man.  See Staples Dec. Ex 3 (*Washington Post*
article dated 4/2/08 ("'We have reiterated many times that
allegations that China stole U.S. military secrets are groundless
and made out of ulterior motives,' Chinese Foreign Ministry
spokesman Qin Gang said at a recent news conference in Beijing,
commenting on the Mak case.")) and Ex. 4 (*Los Angeles Times*
article dated 7/20/09 ("The allegation about a Chinese person
stealing trade secrets in the U.S. for China is purely fabricated
out of ulterior motives" – statement by PRC Ministry of Foreign
Affairs regarding charges against defendant Chung)).  The PRC is
bent on stealing sensitive information from the United States and
shows no sign of relenting.  Only strong sentences offer any hope
of dissuading others from helping the PRC get that technology.

1  **D.   Protect the Public from Further Crimes of the Defendant**

2  Testimony at trial established that aside from documents, an

3  equally important source of information to Chinese intelligence

4  officers is what their sources know.  The information in

5  defendant's head, gathered during the decades in which he held a

6  secret clearance, remains a valuable source of information to

7  another country.  A twenty-year sentence will assure that

8  defendant will not be free to help the PRC or any other country

9  with the knowledge he possesses.

10  **E.   Avoid Unwarranted Sentence Disparities Among Defendants**

11  **with Similar Records Who Have Been Found Guilty of**

12  **Similar Conduct**

13  A sentence of twenty years would be congruous with the

14  sentence received by Chi Mak.  Mak was also an engineer with a

15  secret clearance who was convicted of passing sensitive

16  technology to the PRC over the course of decades.  Mak was sixty-

17  seven when sentenced, six years younger than defendant.  Mak

18  received a sentence of twenty-four years.  A twenty-year sentence

19  for defendant, who is seventy-three, is comparable to the

20  sentence Mak received.

21  **V.   CONCLUSION**

22  Based on the foregoing reasons, the government recommends

23  that defendant be sentenced to 235 months of imprisonment, a fine

24  of $90,000, and the other conditions recommended by Probation.

25

26

27

28

1

**DECLARATION OF GREG STAPLES**

2      I, Greg Staples, declare as follows:

3      1.   I am an Assistant U.S. Attorney in the Central District

4 of California, and am assigned to the above-captioned case.

5      2.   Attached as Exhibit 1 is a *New York Times* article dated

6 January 20, 2007.

7      3.   Attached as Exhibit 2 is a *New York Times* article dated

8 March 4, 2008.

9      4.   Attached as Exhibit 3 is a *Washington Post* article dated

10 April 2, 2008.

11      5.   Attached as Exhibit 4 is a *Los Angeles Times* article

12 dated July 20, 2009.

13      I declare under penalty of perjury that the foregoing is

14 true and correct.   Executed on January 25, 2010, at Santa Ana,

15 California.

16

17

18                              _____
                                Greg Staples
19

20

21

22

23

24

25

26

27

28

11