GEORGE S. CARDONA  
United States Attorney  
ROBB C. ADKINS  
Assistant United States Attorney  
Chief, Santa Ana Branch Office  
GREGORY W. STAPLES  
Assistant United States Attorney  
California Bar Number: 155505  
IVY A. WANG  
Assistant Unites States Attorney  
California Bar Number: 224899  
    United States Courthouse  
    411 West Fourth Street, Suite 8000  
    Santa Ana, California 92701  
    Telephone: (714) 338-3549  
    Facsimile: (714) 338-3561  
    E-mail address: ivy.wang@usdoj.gov  

Attorney for Plaintiff  
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. SA CR 08-024-CJC |
|     Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION; DECLARATION OF GREG STAPLES** |
| v. | |
| DONGFAN "GREG" CHUNG, | Date: 2/8/10 |
|     Defendant. | Time: 9:00 a.m. |

The government files its response to defendant's sentencing position.

Dated: February 1, 2010

    GEORGE S. CARDONA  
    Acting Unites States Attorney

_____  
GREGORY W. STAPLES  
IVY A. WANG  
Assistant U.S. Attorneys

**I. GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION**

    **A.  The Technologies Defendant Possessed Were Defense Articles**

Defendant's claim that the Delta IV and Phased Array technologies are not defense articles, and therefore he deserves a lenient sentence, is wrong. Defendant's Position p. 4. Both technologies are covered by the United States Munitions list. Category V of the list covers rockets; Category XV covers Spacecraft Systems and Associated Equipment. 22 C.F.R. § 121.1. In addition to covering rockets and spacecraft, the USML also covers

> All specifically designed or modified systems or subsystems, components, parts, accessories, attachments and associated equipment for articles in this category, including . . . ground support equipment, test equipment, payload adapter or interface hardware, [and] replacement parts. . . ."

22 C.F.R. § 121.1, XV(e).

The USML also covers

> all technical data, without exception, for all launch support activities (e.g., technical data provided to the launch provider of form, fit, function, mass, electrical, mechanical, dynamic, environmental, telemetry, safety, facility, launch pad access, and launch parameters, as well as interfaces for mating and parameters for launch . . . Further, technical data directly related to the manufacture or production of all spacecraft notwithstanding the nature of the intended end use (e.g., even where the hardware is not SME [Significant Military Equipment]), is designated SME.

22 C.F.R. § 121.1, XV(f).

The Space Shuttle is a spacecraft. The Phased Array technology is a "specifically designed or modified system or subsystem" of the spacecraft. The Delta IV is a rocket. The Tail Service Mast covers launch support activities for a number of factors set forth in the USML, including form, fit, function, mass, environmental, safety, and interfaces for mating. By definition, both technologies are defense articles. The State Department certified that the technologies "are defined by the ITAR as defense articles of a nature described on the U.S. Munitions List." See Government's trial exhibit 211, attached as Exhibit 1 to the Staples Dec.

Defendant's repeated argument that he is entitled to leniency in his sentence because the Delta IV and Phased Array technologies are civil technologies has no merit.[1] His argument also ignores the documents he had pertaining to the F-15 and other weapons underlying his § 951 conviction.

**B.  Defendant's Claim that He Was Not Paid by the PRC Is Not a Mitigating Factor**

Defendant argues that, because there is no evidence the PRC

---

[1] Defendant relies upon a letter from Professor Long, defendant's contact at Harbin University, to support his claim that the technology defendant gave to the PRC was not for military use. When Long was interviewed by the FBI on April 23, 2009, he denied knowing defendant. He also initially denied ever receiving documents from defendant. See FBI 302 of interview of Long, attached as Ex. 2 to Staples Dec. Long now submits a letter discussing documents he initially told the FBI he did not receive from a man he maintains he does not know. Setting aside issues with Long's memory and credibility, his letter does not refer to the documents at issue in this case - in particular the Delta IV or Phased Array documents. His opinion is irrelevant.

paid him, this somehow mitigates the crime.[2]  Defendant argues that he was merely trying to help the PRC become more like the United States.  Defendant's Position p. 18.  Defendant offered no evidence at trial to support the argument that he wanted the PRC to be more like the United States.

Even if the propositions were accepted that defendant was not paid and was trying to help the PRC become more like the United States, these facts are not mitigating.  If defendant was not paid, it shows that "[a] primary objective of the offense was an aggravating, non-monetary objective."  USSG § 2B1.1 Application Note 19(A)(1)(i).  That is a basis for an increased sentence, not a decreased one.

With respect to his purported desire to make the PRC more democratic, (1) giving aerospace technology to the PRC government does not make it more democratic, but instead strengthens the position of the Communist Party in China, and (2) defendant is not free to conduct his own foreign policy with restricted technology.

**C.   Loss of More than $20 Million Is Substantiated**

The Guideline cutoff for loss applicable in this case is more than $20 million.  USSG 2B1.1(b)(1)(L).  The government has submitted declarations from Boeing setting forth the R&D costs for the Delta IV and Phased Array technologies.  The government will make the declarants available for cross-examination at the

---

[2] There is reference of payment in a letter from Gu Weihao to defendant in which he promised to pay defendant and to ensure that he could get the money out of China, something defendant's previous handlers could not do.

3

sentencing hearing.

Loss need not be proved beyond a reasonable doubt. Instead, Application Note 3(C) to § 2B1.1 states that the Court "need only make a reasonable estimate of the loss." The declarations of the Boeing engineers surpass the requirements of the Guidelines.

Defendant's argument that the loss should be discounted in this case because Boeing still has the use of its trade secrets is wrong. In <u>United States v. Wilson</u>, 900 F.2d 1350 (9th Cir. 1990)(a pre-EEA case), the defendant photocopied documents and offered to sell them to his employer's competitor. He was later arrested in a sting when he tried to deliver the documents to an undercover FBI agent. <u>Id.</u> at 1351. The court reduced the company's estimated loss amount of $8 million by half, due to patents on some of the technology. <u>Id.</u> at 1355-56. There are not patents for the technology in this case. Giving the defendant the benefit of the doubt, the court further reduced the loss from $4 million to $1 million due to the "ball park estimate" of loss provided by the victim company. <u>Id.</u> Here, the government has provided sworn declarations from Boeing engineers directly involved in the projects setting forth the R&D costs.

In <u>United States v. Four Pillars Enterprise Company</u>, 253 Fed. Appx. 502, 512 (6th Cir. 2007), a § 1832 case, not § 1831, the defendants were arrested in a sting in which they took mock confidential documents. <u>Id.</u> at 504. The court excluded from loss any specific amounts attributable to formulas for which the government failed to provide reliable loss estimates. <u>Id.</u> at 512. Again, that is not an issue in this case where the Boeing declarations establish loss by Boeing employees involved in the

programs.

In both <u>Wilson</u> and <u>Four Pillars</u> the victim companies retained their technologies and no competitor received them. Neither case holds that loss in the form of R&D costs should be reduced because the victim company still had use of its technology. Equally important, neither case holds that loss is reduced in cases where the information is not delivered to another party.

**D.   Defendant Is Not Convicted of Inchoate Crimes**

Defendant argues that he is entitled to a reduced sentence because his crime is analogous to an "inchoate crime." Defendant's Position p. 12. This ignores the plain language of § 1831. The crime for which defendant was convicted is complete upon possession of a wrongfully taken trade secret with knowledge that it is to benefit a foreign government. 18 U.S.C. § 1831(a)(3). Congress wrote separate sections for conveying a trade secret (§ 1831(a)(2)) and for attempts to violate the statute (§ 1831(a)(4)). Defendant was convicted of a complete offense under § 1831(a)(1) and (3) for his unauthorized taking and possession of trade secrets with the intent to benefit the PRC. There is no basis for reducing his sentence because his offense was somehow "inchoate."

**E.   A Fine of $90,000 Is Appropriate**

Defendant claims that his net worth is $1,690,000, not $3 million as stated in the PSR. Defendant's Position p. 13. Even if defendant's net worth is $1,690,000, a $90,000 fine is still appropriate, and would leave defendant with $1,600,000. A $90,000 fine represents only 5% of defendant's claimed net worth.

**F.   Response to Miscellaneous Objections**

Defendant raises numerous objections to the PSR, but most boil down to defendant's continued denial of guilt. Only two points merit a response.

First, defendant claims that he "brought home computer-generated engineering output that he recognized was incorrect to figure out what was wrong with it." Defendant's Position p. 15. There is no evidence in the record to support such a claim.

Second, defendant argues that there were no limits on his ability to take work home. Defendant's Position p. 16. Again there is no evidence to support this. Every Boeing engineer testified that there were clear restrictions on taking work home, and that in no instance could work be kept at home. Even defendant's expert, Dr. Stanley, admitted that he did not keep work at home.

**G.   The Cases Cited by Defendant in Support of a Lower Sentence do not Reflect Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Defendant cites a number of cases he argues present sentences similar to what the Court should impose in this case. Defendant's Position p. 27-29. Defendant's analysis is flawed for several reasons:

   1. No loss amount is provided for most of the cases cited by defendant. In the few cases where loss is mentioned, the amounts are far below the loss in this case. In the Fei Ye case, loss was only $1 million to $2.5 million, far below the $35 million loss in this case.

   2. None of those cases went to trial, and at least some of

1    the defendants, Meng, Fei Ye, Bergeson, Montaperto, and
2    Keyser, for example, cooperated with the government.
3    Staples Dec. ¶ 3.
4    3.   With one exception, none of the crimes in the cited
5    cases lasted as long as the crime in this case, with one
6    exception.  In the Alvarez case, Defendant's Position p. 28,
7    the court found the defendant had been a spy for Cuba for
8    almost thirty years.  What distinguishes that case is that
9    the defendant there was providing information on Cuban
10   exiles in the United States, not technology.  Thus, it is
11   likely that there was no loss figure at all.
12 The case that most closely reflects this one in terms of conduct
13 and duration is the Chi Mak case.  For the reasons set forth in
14 the government's sentencing position, defendant should receive a
15 sentence consistent with that imposed on Mak.  Nothing in
16 defendant's position undercuts the government's recommendation
17 for a twenty-year sentence.

**DECLARATION OF GREG STAPLES**

I, Greg Staples, declare as follows:

1. I am an Assistant U.S. Attorney in the Central District of California. I represent the government in this case.

2. Attached as Exhibit 1 is an ITAR certification from the Department of State that was Exhibit 211 at trial. Attached as Exhibit 2 is an FBI 302 report of interview with Gu Zhen Long.

3. I learned from attorneys with the Department of Justice in Washington, D.C., that the following defendants mentioned in defendant's sentencing position pled guilty and cooperated with the government: Meng, Fei Ye, Bergeson, Montaperto, and Keyser.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 1, 2010, in Santa Ana, California.

_____
Greg Staples